*John M. Sheets, M. R. Brailey* and *John P. Manton,* for plaintiff.

*Smith & Baker,* for defendant.

---

## REGULATION OF THE SALE OF MILK.

[Circuit Court of Lucas County.]

HARLEY WALTON v. CITY OF TOLEDO.*

Decided, July 1, 1902.

*Ordinance—Authorizing Inspection of Milk Valid—As a Health Measure—Permit to Sell Not a License—Exemption of Vendors of their Own Products Not Applicable—Broad Powers to Boards of Health—Ordinance not Burdensome.*

1. An ordinance regulating the sale of milk and cream, and providing for an examination of the places where produced and the product sold, and for the issuing of a permit to sell by the board of health, is not burdensome to the producer or inimical to the Constitution.
2. Such a permit, for which a fee of one dollar is charged, is not a license, and therefore not in violation of Section 2669, which exempts vendors of their own products from payment for a license.
3. Moreover, the exemption found in Section 2669 is subject to the exception that it shall not be construed to limit the powers of the board of health, and a fee of one dollar may be collected from persons selling milk regardless of whether it be denominated a license.

HAYNES, J.; PARKER, J., and HULL, J., concur.

Heard on error.

The petitions in error were filed to reverse the actions of the court of common pleas affirming the action of the police court upon certain prosecutions had under the ordinances of the city

---

*Affirmed by the Supreme Court without report, October 27, 1903.

of Toledo in regard to the selling of milk from wagons in the city of Toledo, and the questions argued go to the right of the city of Toledo to regulate the milk traffic in the city.

The statutes bearing on the question, and which have been discussed, I will cite first.

I refer to Section 1692, Revised Statutes, the municipal code, which reads as follows:

"In addition to the powers specifically granted in this title, and subject to the exceptions and limitations in other parts of it, cities and villages shall have the general powers enumerated in this section, and the council may provide by ordinance for the exercise and enforcement of the same."

Paragraph 24 of this section provides:

"To establish a board of health and invest it with such powers and impose upon it such duties as may be necessary to secure the inhabitants from the evils of contagious, malignant and infectious diseases."

However, as I have once before remarked, the attitude of this city toward special legislation is generally manifest, as it is in this case.

Section 2141, Revised Statutes, provides that:

"In cities of the third grade of the first class and in cities of the first grade of the second class, there shall be no board of health, but the board of police commissioners in such cities shall exercise all the powers and perform all the duties of the boards of health and mayors as provided in this chapter."

Section 2669, Revised Statutes:

"The council of any city or village may provide by ordinance for licensing all exhibitors of shows or performances of any kind, not prohibited by law, hawkers, peddlers, auctioneers of horses and other animals on the highways or public grounds of the corporation, venders of gunpowder and other explosives, taverns and houses of public entertainment, and hucksters in the public streets or markets, and, in granting such license, may exact and receive such sum of money as it may think reasonable; but nothing in this section shall be construed to authorize any municipal corporation to require of the owner of any product of his own raising, or the manufacturer of any article

manufactured by him, license to vend or sell in any way, by himself or agent, any such article or product; provided, that in cities and villages, the council may confer upon, vest in and delegate to the mayor of such city or village, the authority to grant and issue licenses and revoke the same. Provided further, that nothing herein contained shall be construed to limit the power conferred upon cities and villages in section *one thousand six hundred and ninety-two* of said Revised Statutes."

In 1893 we find a law in the local laws of the Legislature of that year, 90 O. L. L., 335, which is another law for the city of Toledo:

"Section 2672-113. Any city of the third grade of the first class may provide by ordinance for licensing persons, firms and corporations engaged in such city in any occupation, trade, business or profession, as hereinafter named, and the owners of horses, mules, and vehicles of every kind used in such city, as hereinafter limited."

And Section 2672-114, provides:

"That such ordinance or ordinances may provide and require that the occupations, trades, business and professions as enumerated in this section, shall not be engaged in nor practiced in such city until in each case, as may be and as provided for therein, license therefor has been obtained in accordance therewith, viz:" * * *

And then follows a long list of occupations which it is unnecessary to repeat, among them being:

"Selling, peddling or hawking any wares, goods, merchandise or produce from vehicles, hand or push carts, baskets, or by hand, in the streets or alleys, provided that any person selling the products of his own raising or goods of his own manufacture shall not be made liable for any license for selling, hawking or peddling the same in any manner on the streets or alleys of such city."

And in Section 2672-115 it is provided:

"That such ordinance or ordinances, providing for licensing owners of and for horses, mules, and vehicles used in such city, shall not require licenses for or on account of horses or mules less than three years of age; nor shall farmers, gardeners, fruit growers or florists be made liable for any license whatever for horses, mules, vehicles or otherwise, for marketing, selling, hawk-

ing or peddling the products of their farms, gardens or green houses or for hauling any produce, goods or merchandise into or out of such city; nor shall such horse, mule or vehicle license be required of persons living without such city and engaged in huckstering and marketing country produce; nor shall any such license fee be required of any person living without such city and using any horse, mule, cart, sulky, carriage or other vehicle in going into or out of such city.''

Section 2672-116 provides for penalties, which may be fines or imprisonment, or both.

These seem to be the various sections to which our attention has been called, or which have come under our observation as bearing upon this question. Acting under the powers conferred upon the city council, it, on November 19, 1900, passed the ordinance which is set forth in the record, which is of considerable length and is entitled: ''An ordinance to regulate and provide for the sale of milk and cream, within the city of Toledo, and to grant permits to venders thereof.'' The second section of this ordinance provides:

''No person or persons shall sell milk or cream within the city of Toledo without first having been granted a permit therefor by said board as hereinafter provided.''

And there are in all some twenty-five sections, and it provides very fully for the examination and testing of milk which is sold in the city; for the examination and inspection of the various establishments where milk is produced; for the examination and inspection of the cattle themselves; it provides also in regard to any cattle that may be diseased or exposed to disease; it provides for the prohibiting of the sale of milk, milked from cattle by persons who have been sick or who are diseased in any way, and provides that milk shall not be sold within a certain time after the birth of a calf, and various other matters of that kind all pertaining to the sale of milk and having for their object the protection of the purchasers of milk and the obligation of selling milk of good and pure quality to the inhabitants of the city of Toledo.

Now the contention on the part of the plaintiffs in error is that they come within the exceptions of the statutes cited, and

they show in their evidence that this article of milk which was being sold at the time these arrests were made was produced on a farm, within the county of Lucas, and from cows which were owned by Jackman—the farms being either owned or rented by him—and that Walton was working, in selling milk, for Jackman.

It is claimed and has been argued here at considerable length, that these prosecutions are illegal because, as I have stated, the acts of defendants come within the exceptions, and they had the right to sell the products of their own farms without any permission of the city of Toledo and without any inspection on the part of the city in regard to the articles sold by them. Some discussion was had as to whether this was a "license" or not; whether it came within the definition of a license. The question of licenses in the state of Ohio is one which has been discussed a good deal in regard to cases arising under the clause of the Constitution which provides that there shall be no license for the sale of intoxicating liquors and in regard to tax which is imposed upon those who sell liquors within the state. Discussion of the question and definitions of license may be found in *Adler* v. *Whitbeck,* 44 Ohio St., 539, 558, 559, and also as referred to by the Supreme Court of this state, in a decision of the Supreme Court of the state of Michigan found in *Youngblood* v. *Sexton,* 32 Mich., 406, where there is also a discussion and definition of the question of license by Chief Justice Cooley, speaking for the Supreme Court of that state.

It is held, as we understand the decision in this state, that where a tax is imposed for the sale of intoxicating liquors and the collection of the tax is enforced by a fine, or fine and imprisonment, that is to say, the party is not permitted to sell unless he paid a certain tax, and if he did sell without making payment he was subject to prosecution and to be fined or imprisoned, or both—it is held in that case that the law really amounted to a license, that the effect of that was a license, because it was a prohibition under penalties. Subsequently the law was changed and a person is not prohibited from selling, but upon those who do sell a tax is imposed, to be collected as taxes are collected, and it is held to-day in the state of Ohio, that such regulations

do not amount to a license and do not come within the prohibition of the Constitution of the state of Ohio.  Judged by that test, it would seem that the clauses of the statutes to which I have referred would be held to be a license; but in the judgment of this court, this is not the principal question, nor the decisive question in this case.

In the first place, Section 2669, Revised Statutes, provides, "that nothing herein contained shall be construed to limit the power conferred upon cities and villages in Section 1692 of said Revised Statutes," which, as I have said, relates to a board of health.  The act passed afterwards, Section 2672-113, Revised Statutes, *et seq.* (90 O. L. L., 335), is not a part of this original chapter, title 12, and has nothing to do with it.  It was passed long after Section 2669, Revised Statutes, and is a separate and independent act relating to the city of Toledo.

We think that this ordinance is planted upon the power of the city council to regulate the sale of these articles in the city of Toledo under the statutes which I have read in regard to the board of health.  We think it is a health ordinance exclusively. It is passed for the protection of the inhabitants of the city and to prevent the sale of impure milk, to prevent the spread of disease or the danger of the spread of disease among those who consume the milk as purchasers.  It is needless to say that the powers of the board of health are very large.  If you read the whole statutes of the state of Ohio on the subject you will find that the powers that are given to the various boards of health and the laws enacted for the purpose of protecting the people of the state from contagious diseases, and from the sale of diseased or impure articles, are about as broad as language can make them; they extend into every relation of life and the protection of health is one of the most important departments that the Legislature has to deal with, or that the city council has to deal with under the powers conferred upon it by the Legislature of the state in carrying out the general police powers of the state. As I have stated, the police commissioners are made in this city the board of health, and under Section 1692, Revised Statutes, and under this paragraph 24, the city council has conferred upon that body the powers which are set forth in this ordinance.

We are clearly of the opinion that this matter of a dollar that is charged to each wagon that is to be used in selling, does not come within the clause in regard to a license; it is simply one step in this broad ordinance for the purpose of enforcing the object which was had in view in passing the ordinance, to-wit, the enforcing of the sale of pure milk in the city of Toledo. It requires a person who is selling milk in the city of Toledo to make an application to the board of commissioners, and he is to answer certain questions and give his name and occupation, where his dairies are and where he expects to sell. It is a very simple matter in itself; and after that the city issues to him a permit, as it is called, and this tag or certificate that is placed or attached upon the wagon, and perhaps upon the cattle, to show that the party who is selling these articles has submitted to the conditions of the ordinance, to the inspection that is to be had by the authorities—the board of health of the city of Toledo—and that the milk that he is selling is from barns that have been inspected and from cattle that have been inspected, and that the conditions have been fulfilled so far as human foresight can do it, to see that the milk that is sold is a pure article. It is to enable the purchaser to rely upon the fact that the action of the board of health has been complied with.

Now, in that view of the case, and we think it is the correct view to take, this ordinance does not, in our judgment, come within the provisions of the statute with regard to a license. But, if it did, we think that the clause which excepts, in Section 1692, Revised Statutes, the legislation under it, would take it out of the statute. In other words, we think the statute does not apply and that we must look to the other sections for the powers which are conferred upon the city and for the right of the city to take the action which was taken in the passing of the ordinance and the authority of the city in enforcing the ordinance for inspection.

Criticism is made in regard to the ordinance and the powers which are given to the inspector. We see nothing in that law that is inimical to any provisions of the Constitution or to laws of the state in regard to the powers which are granted, nor do we see anything that need to frighten or trouble any person who

is intending to perform his duty of having cattle that are healthy and stables that are clean and who is intending to sell milk that is pure to the inhabitants, but it should rather be presumed that all will desire to do that, that they will comply with the statute and be enabled to say to their customers, "You can have no fear of this milk; it comes within the inspection of the city of Toledo and is pure milk." We see nothing that should be held to be burdensome about it. It is true that officers may examine the milk and may take a portion of the milk for inspection and it goes before the board of health and a record is kept of it, but the burden is no greater in regard to that matter than in regard to other matters, because in case of a contagious disease the powers of the board of health are very ample; they can close up a man's business, and perhaps his dwelling, and sequester him and his family and place them in a position where they may be protected and where the public may be protected from any evils which may result from disease, and no more seems to be required under this act than is necessary to enable the public officers to inspect the milk and see that it is of the character that is required by the ordinance. The presumption is that the officers will perform their duty fairly and justly, and if they abuse the powers that are vested in them, of course they will be held liable to the laws of the land.

Now, maintaining this view, we think that the judgment of the court of common pleas in affirming the judgment of the police court is correct and these judgments, respectively, will be affirmed.

Counsel for Walton said they did not see how he could be prosecuted; that his case was different. The provisions of the ordinances are broad enough to cover him, and, knowing the facts of the case, the conviction of Walton was as correct as that of Jackman.

*Southard & Southard*, for plaintiffs in error.

*M. R. Brailey*, City Solicitor, for defendant in error.